## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **The Estate of BERNICE L. JONES,** | * | |
| **and DAVID KING** | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil Action No. **PJM 09-1419** |
| | * | |
| **ST. THOMAS MORE NURSING** | * | |
| **& REHAB CENTER, et al.[1]** | * | |
| | * | |
| Defendants | * | |
| | * | |

### MEMORANDUM OPINION

David King and purportedly the Estate of Bernice L. Jones have filed suit, alleging several "criminal torts," including claims styled "unlawful interference with a surrogate relationship" and "reckless disregard" for Jones' health on the part of St. Thomas More Nursing & Rehab Center ("St. Thomas More"), Barbie Powell, and Barbie's Assisted Living.  King also raises an individual claim for defamation against Defendants.

St. Thomas More has filed a Motion to Dismiss [Paper No. 5], asserting that the Court lacks jurisdiction to hear the case and that Plaintiffs have failed to comply with a mandatory condition precedent to maintaining their claims.  Plaintiffs, in response, have moved for leave, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to submit an Amended Complaint [Paper No. 11].  For the following reasons, St. Thomas More's Motion to Dismiss is **GRANTED IN PART WITHOUT PREJUDICE** and Plaintiffs' Motion to Amend is **GRANTED IN PART** and **DENIED IN PART**.

---

[1]The correct spelling of the saint's name and that of the Defendant's Center is "More."  The Court will use that spelling throughout.

1

## I.

According to the Complaint, in 2008 Bernice Jones, a New York resident at the time, visited her 83-year-old cousin in Washington D.C.  During the visit Jones became ill and was admitted to St. Thomas More Nursing & Rehab Center in Hyattsville, Maryland for the purpose of obtaining appropriate rehabilitative services.  On June 11, 2008, St. Thomas More discharged Jones to Barbie's Assisted Living, a facility located in Glenn Dale, Maryland.

At some point during this period, Jones allegedly nominated David King as her surrogate, giving him specific responsibilities regarding her health care decisions.  The parties dispute whether King was at some point thereafter removed from this position and substituted by St. Thomas More, but regardless, on June 16, 2008 after Jones was discharged from St. Thomas More, King filed a complaint with the Department of Health and Mental Hygiene in the State of Maryland.[2]  This complaint was eventually dismissed.

On August 4, 2008, King visited Jones at Barbie's Assisted Living, and avers that he was shocked and disturbed to find that she showed rapid mental and physical deterioration.  He describes wounds on her body arguably consistent with neglect by her health care providers.

On January 7, 2009 Jones died.  This litigation followed.

Apart from the Complaint's allegation of abuse and neglect against the health care facilities, King alleges that on August 6, 2008, Barbie Powell made statements to King's girlfriend that he was stealing Jones' money and that Jones had no family or friends.  King claims these statements were false and reckless, and diminished his reputation.

In its Motion to Dismiss the action, St. Thomas More argues that the Maryland Health Claims Act requires Plaintiffs to file their claims with Maryland's Health Care Alternative Dispute

---

[2]King does not specify the nature of this complaint, but presumably it had to do with the treatment and care of Jones.

Resolution Office ("HCADRO")[3] as "a condition precedent" to bringing a legal action against it in this Court.  *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02; *Rowland v. Patterson*, 882 F.2d 97, 97 (4th Cir. 1989).  St. Thomas More also submits that the case should be dismissed because there is no diversity of citizenship between the parties.  Plaintiffs argue that they are not subject to the Act because they claim criminal torts and not medical malpractice.  As to lack of diversity, Plaintiffs state that even though Jones died in Maryland, she was all times a New York resident.

## II.

The Court *sua sponte* raises the issue of King's standing to bring this suit on behalf of Jones.  There is no indication that King has been designated as the Personal Representative of Jones' estate by the State of New York (of which King alleges Jones was at all relevant times a resident) or by the State of Maryland (in which case, there may be a lack of diversity of citizenship between the Jones' estate and Defendants).

Simply because King may have been designated Jones' "surrogate" – an elusive term – at or near the time of her death (and if he seeks to remain in this Court, he must promptly file a copy of his purported "surrogacy") would not authorize him to bring a claim on behalf of her estate following her death.  Accordingly, King shall promptly submit to the Court a copy of his appointment as Personal Representative by the State of New York.  That said, there is a procedural reason why the claim on behalf of the estate must be dismissed.

---

[3]Previously the Health Claims Arbitration Office.  *See* Md. Code Ann., Ct.s & Jud. Proc. § 3-2A-01 (Ed. Notes) ("Section 5, ch. 5, 2004 Sp. Sess. provides that "on the effective date of this Act, the Health Claims Arbitration Office shall be renamed the Health Care Alternative Dispute Resolution Office.").

III.

Maryland's Health Care Malpractice Claims Act governs actions brought by "a person against a health care provider for medical injury." Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02. Medical injury is defined as "an injury arising or resulting from the rendering or failure to render health care." *Id.* at § 3-2A-01(g). Regardless of how a plaintiff pleads the claims, claims that concern medical care and treatment are governed by the Act. *Brown v. Rabbit*, 476 A.2d 1167, 1169 (Md. 1984) ("[T]he critical question is whether the claim is based on the rendering or failure to render health care and not on the label placed on the claim."); *see also Cannon v. McKen*, 459 A.2d 196, 200 (Md. 1983) ("[T]he legislature intended to include in the scope of the Act only those claims for damages done to or suffered by a person originating from, in pertinent part, the giving of or failure to give health care.").

A medical injury that falls under the Act must first be filed in Maryland's Health Claims Arbitration Dispute Resolution Office ("HCADRO"). *See Brown*, 476 A.2d at 1169-70 ("If health care is or should be rendered and damages result therefore, then it is a claim under the Act and must first be arbitrated."). Although the Act has been amended to allow a plaintiff to unilaterally waive the Act's arbitration requirement, waiver is only effective if the potential plaintiff files her claim and a certificate of qualified expert with HCADRO and follows specific procedures for waiver of arbitration *prior* to filing her claim in state or federal court. *See Tranen v. Aziz*, 500 A.2d 636, 639 (Md. 1985); *Goodwich v. Nolan*, 680 A.2d 1040, 1050 n. 13 (Md. 1996) ("[Waiver of arbitration] may be accomplished unilaterally, by either the claimant(s) or defendant(s), after the claimant has filed the certificate of qualified expert required by § 3-2A-04(b)."); *see also* Md. Code Ann., Ct. & Jud. Proc. §§ 3-2A-04(a) & (b)(1), 3-2A-06B. Even in cases involving intentional torts, Maryland courts have held that such cases are subject to the Act's requirements

4

to file a claim in HCADRO or to submit a waiver of arbitration.  *See Jewell v. Malamet*, 587 A.2d 474, (Md. 1991).

Here, assuming arguendo that diversity of citizenship exists between the parties, Plaintiffs' Complaint alleges, *inter alia*, that Jones "accumulated wounds on her body that is consistent with negligent heath care while in Barbie's Assisted Living" and that Jones showed "rapid mental and physical deterioration."  The Complaint also alleges that there was "complete disregard for [Jones'] mental and physical health."  These allegations are indisputably based on Defendants' purported "rendering or failure to render health care," and are thus subject to Maryland's Health Care Malpractice Claims Act.  *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-01(g).  Accordingly, Plaintiffs were required to either first submit their claim to HCADRO before maintaining an action in this Court or they should have performed the necessary actions to effect a waiver of arbitration as required by §3-2A-04(b).  There is no indication that Plaintiffs did either.  In consequence, Plaintiffs' claims concerning the medical care and treatment of Jones will be dismissed without prejudice.[4]

St. Thomas More's Motion to Dismiss is therefore **GRANTED** insofar as it argues that Plaintiffs cannot maintain their claims until they meet the requirements of the Maryland Health

---

[4] The Maryland Court of Appeals has held that dismissal without prejudice is appropriate precisely under such circumstances as these.  *See, e.g., Oxtoby v. McGowan*, 447 A.2d 860, 864-65 (Md. 1982) (holding that, while the statute does not take away the subject matter jurisdiction of a circuit court to hear and render judgments in cases involving claims that fall within the Act, "the [Maryland] General Assembly has forcefully expressed in § 3-2A-04(a) [the provision requiring a plaintiff to first file her claim with HCADRO] its intent that this condition precedent be satisfied," and noting that "[s]o strong is this public policy that this Court will, *sua sponte*, . . . order an action dismissed where the litigants have not followed the special statutory procedure); *see also Tranen*, 500 A.2d at 639, 639 (stating that while failure to adhere to the Act's provisions "does not divest the circuit court of subject matter jurisdiction to hear a dispute involving a health claim, it creates a condition precedent to the institution of a court action," and affirming the circuit court's dismissal of plaintiffs' action after finding that appellants failed to comply with the Act's judicial review provisions).

Care Malpractice Claims Act and the Complaint with regard to Jones is **DISMISSED WITHOUT PREJUDICE**.

## IV.

The Court considers King's individual claim for defamation against Defendants Barbie Powell and Barbie's Assisted Living.[5]  Although a plaintiff need not plead a defamation claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, the pleadings in a defamation case must still be sufficiently detailed to enable a defendant to appropriately respond.  *See Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005).  In this case, King's Complaint does not provide Defendants with sufficient detail so as to give fair notice of the nature of the claim against them and the grounds upon which it rests.  Accordingly, King's motion to amend his complaint is **GRANTED** with respect to the defamation claim and he shall have 20 days to amend his Complaint in order to plead the defamation claim with sufficient specificity.  In all other respects, the Motion to Amend denied.

## V.

Summing up, the Court **GRANTS WITHOUT PREJUDICE** Defendants' Motion to Dismiss all claims by the Estate of Bernice L. Jones and **DENIES** the Motion with respect to King's defamation claims.  The Court **GRANTS IN PART** Plaintiffs' Motion to Amend.  Plaintiff

---

[5]The Complaint alleges that Defendants collectively defamed King.  But on its face, there is no apparent nexus between any statement Bernie Powell may have made and St. Thomas More.  According, St. Thomas More is dismissed from the case without prejudice.

King shall have 20 days to amend his Complaint with respect to his defamation claim.  In all other respects, Plaintiffs' request to amend their Complaint is **DENIED**.

A separate Order will issue.


_____/s/_____

PETER J. MESSITTE

UNITED STATES DISTRICT JUDGE

October 1, 2009